No. 32,852

THE INDEPENDENCE STATE BANK, *Appellee,* v. A. W. DROHEN and WILLIAM DEUTCH et al., *Defendants;* JAMES W. DROHEN, *Appellant.*

(58 P. 2d 260)

Opinion filed June 6, 1936.

*Harold Medill,* of Independence, for the appellant.

*John Bertenshaw* and *Kirke C. Veeder,* both of Independence, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by James W. Drohen, one of three defendants, against whom a judgment of foreclosure was rendered in favor of the plaintiff bank involving certain shares of corporate stock owned by him, which the plaintiff claimed had been pledged to it by A. W. Drohen, a brother of the appellant, to secure an indebtedness of A. W. Drohen to the plaintiff bank, the appellant

denying any knowledge, consent or authority from him to the pledging of the same. The case was tried by a jury and a verdict and judgment were rendered in favor of the bank, to the effect that the stock had been legally pledged as security for the brother's indebtedness, and the judgment authorized the sale of the same for the payment of the indebtedness.

The main questions involved in the appeal are errors in the instructions given and errors in overruling two motions for a new trial and in rendering judgment for the plaintiff.

Judgment was originally rendered against all three defendants by default after personal service on each of them, being a personal judgment against A. W. Drohen on his notes held by the bank and against all three of them foreclosing the stock owned by each of them separately and held to have been pledged as security. The appellant herein on subsequent application had the judgment against him and his stock set aside. He, with the consent of the court, answered denying that he had ever pledged the stock or authorized any one to give or deliver the stock to his brother or the bank for that purpose, and alleged that any and all such deliveries were made without his knowledge, consent or approval, and that he did not learn of such delivery of stock until May, 1932, when his brother told him that it was pledged to the plaintiff bank; that he never approved or ratified the delivery, that he never assigned or endorsed the stock to the bank and that any claimed assignments thereof were forgeries. This answer was verified and plaintiff filed a reply consisting of a general denial.

The original stock of the appellant was 300 shares in the Prairie Pipe Line Company, which the brother said he procured from the wife of the appellant at different times in 1931 and delivered them to the bank as security on his notes. The brother testified that he sent assignment certificates to appellant in Oklahoma for his signature thereto, which he says were returned to him by mail bearing a signature which he thought was the appellant's, and after witnessing the same he delivered such assignments to the bank. These assignments were on separate sheets and not on the stock certificates.

In March, 1932, the Prairie Pipe Line Company consolidated with another company, and the new company was called the Consolidated Oil Company, which issued to the appellant 420 shares of stock for the 300 shares in the original company. The bank arranged for this transfer and exchange of stock, and new assignments were said

by the brother to have been presented to the appellant and delivered back to the brother by the appellant, and by the brother delivered to the bank.

The appellant on the witness stand denied having made any assignments, and after examining the same said the signatures thereto were not his but were forgeries. He also supported the allegations of his answer as to his not knowing of the delivery prior to May, 1932, nor consenting to or ratifying any such delivery or assignment.

An officer of the bank testified that the notes of the brother were renewed in April, 1933, and that in June, 1933, he sent for the appellant, and when he came to the bank in response they looked at the assignments and talked the matter over about the stock being pledged as security for the brother's notes. This action was commenced in September, 1933, and the first judgment by default was rendered in December, 1933, and set aside shortly thereafter as to appellant.

The plaintiff used two witnesses, the brother and an officer of the bank, and also introduced the several alleged assignments. The appellant was his only witness in defense, and he introduced two letters, being the correspondence between himself and the Consolidated Oil Company. It is largely a fact case and there are serious conflicts in the oral testimony.

The appellant complains of the introductory remarks in the instructions to the jury defining the issues as follows:

"The bank claims the stock was pledged as security for the payment of said indebtedness, and the defendant, J. W. Drohen, claims it was not."

The appellant claims that the court overlooked the real issues, which were whether or not the signatures to the assignments were genuine or forgeries, and whether or not appellant consented to, approved or authorized the pledging of his stock to plaintiff for his brother's debt.

Appellant insists that the statement of the court was so indefinite that it told the jury nothing, citing *Honick v. Railway Co.*, 66 Kan. 124, 71 Pac. 265, and *Insurance Co. v. Despain*, 77 Kan. 654, 95 Pac. 580, in support of his criticism and against the ignoring of any of the issues formed by the pleadings and supported by the proof. An introduction in instructions is not intended to contain an enumeration of all the elements in detail involved in the issues. The term "pledged as security" covers the two ways mentioned by the appellant, as consummating or effecting such pledging. Pledging as se-

curity may be accomplished by assignments which will be ineffective if they are forgeries. Likewise consent, approval or ratification, if established, may constitute a pledging of securities. Both these controverted matters were necessarily included in the introductory statement. Besides, they are both set out in detail in subsequent instructions, forgeries being treated as being no endorsement whatever. Even if the statement did not entirely cover the issues, it is not a serious matter for two reasons: First, it was held in *Lee v. Downing*, 113 Kan. 329, 214 Pac. 786, that—

"The mistake of the court in stating the issues formed by the pleadings is not a ground of reversal where it appears that the contested issues in the case were fully tried out and submitted to the jury in other instructions given by the court." (Syl. ¶ 4.)

And second, the appellant made no request for modification or change and in fact filed no requested instructions. In *Judy v. Buck*, 72 Kan. 106, 82 Pac. 1104, it was held:

"In the absence of a request to do so it is not error for a trial court to omit to instruct the jury upon special phases of the case, where proper general instructions have been given." (Syl. ¶ 3.)

Also, in *Railroad Co. v. Noland*, 75 Kan. 691, 90 Pac. 273, it was held:

"When it is desired to have particular questions of law presented to the jury a written request should be made to the court so to instruct." (Syl. ¶ 5.)

Instructions Nos. 2, 3 and 4 are particularly assigned as being erroneous. Nos. 2 and 4 are said to deal with abstract statements of law, and the case of *Kastrup v. Yellow Cab and Baggage Co.*, 124 Kan. 375, 260 Pac. 635, is cited as applicable because in that case the last instruction grouped all the elements contained in the earlier ones, which was there held to have been misleading. Here the court in instruction No. 3 treated the question of forgery from appellant's viewpoint when it referred to the stock being pledged "without any transfer or endorsement," which would be the situation if the assignments were forgeries. We fail to see any of the grouping of elements which were held to have been misleading in the Kastrup case.

Pledging was fully defined and explained in instruction No. 2. Then in instruction No. 3 the court explained how a pledging could be made by delivery by the owner, or any one acting for him or with his knowledge and consent, without any transfer or endorsement, and in instruction No. 4 the court applied those definitions

and rules to the evidence as separately maintained by each party. Instead of a grouping there might be said to be an omission, of which the plaintiff might complain—that is the effect of a legal and valid transfer or endorsement by the owner, which it was perhaps thought to be unnecessary to explain. Appellant complains of the reference in the instructions to any one acting for him or with his knowledge and consent in the delivery or pledging of the stock. Appellant in referring to the evidence on this subject entirely omits the evidence of the appellant himself as to his conversations with his brother and with the officer of the bank, which shows that he learned from his brother of the pledging in May, 1932, and from the banker in June, 1933, and was served with summons in September, 1933, during which time he is not shown to have done anything to change the situation.

In the fourth instruction the jury was distinctly informed that if the stock was delivered for the purpose of a pledge "without the knowledge, consent or authority of the owner, J. W. Drohen, then you should so find and your verdict should be in favor of the defendant and against the plaintiff bank." If all the instructions are read together they plainly show the theory of the appellant was fully presented and there was no error in stating that valid pledging can be effected even without any actual endorsements or assignments when done with the knowledge, consent and authority of the owner.

In 49 C. J. 901 it is said:

"A pledge of property, without the owner's authority and consent, may become valid and binding when the owner, with full knowledge of the unauthorized pledge, approves it, where it was made by a third person, or ratifies it, where it was made by his agent on his behalf or for his benefit."

In *Christy v. Central State Bank*, 118 Kan. 213, 234 Pac. 984, it was stated:

"The ratification by the principal of an unauthorized act of his agent is equivalent to an original grant of authority." (Syl.)

(See, also, *Halloway v. Milling Co.*, 77 Kan. 76, 93 Pac. 577, and *Burgess v. Hixon*, 75 Kan. 201, 88 Pac. 1076.)

We can readily agree with appellant in his argument for a new trial as to the plain distinction between a pledging and a bailment. He claims the evidence here shows nothing more than a bailment. In the citation of appellant from 49 C. J. 900 the mere possession of property is said to be insufficient to authorize the legal pledging

of the same and such pledging is void, but with this qualification, "in the absence of authority and consent by the owner, or of subsequent approval or ratification by him." The things that occurred after the owner learned of the attempted pledging are as important in showing consent and approval as are those occurring earlier. The instructions, we think, fully cover the necessary elements of consent, approval and ratification in the matter of effective pledging, and we are of the opinion that such pledging could be binding, as the court stated in the third instruction, "though the defendant, J. W. Drohen, made no endorsement on said certificates, or any separate written instrument."

The appellant ably argues the question of error in the overruling of the motions for a new trial based not only on the instructions claimed to have been erroneous but also on the question of the verdict being contrary to the law and the evidence. The matter of its being contrary to law was mainly covered by the discussion of the instructions given, and as to its being contrary to the evidence, it is enough to say there was a serious conflict in the evidence, and we find from the record there was sufficient evidence, if given credence, to support the verdict and to justify the trial court in approving the same.

The second motion for a new trial was substantially the same as the first motion, including surprise and newly discovered evidence, but it was supported by a number of affidavits of an impeaching character and one of a corroborating character on the question of the signatures to the assignments being forgeries. The new evidence being of this kind, in the absence of proof along other necessary lines, there was no error in overruling the second motion for a new trial nor in rendering judgment for plaintiff and against defendant.

The judgment is affirmed.